**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
*spencer@spencersheehan.com*

   *-and-*

**REESE LLP**
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
*mreese@reesellp.com*

United States District Court
Southern District of New York                                   1:19-cv-10463

| |
|---|
| Mario Vinales, individually and on behalf of all others similarly situated, |
| Plaintiff, |
| - against - |
| Kemps LLC, |
| Defendant |

Class Action Complaint

        Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining

to plaintiff, which are based on personal knowledge:

        1.      Kemps LLC ("defendant") manufactures, distributes, markets, labels and sells ice

cream products purporting to contain flavor from their natural characterizing flavor, vanilla,

specifically, Vanilla Bean Ice Cream, under their Simply Crafted brand ("Products").

        2.      The Products include multipe varieties including Heavenly Vanilla and Strawberry

Rhubarb Cobbler ("Vanilla ice cream with luscious strawberry rhubarb swirl and oatmeal cookie

pieces") among others.

    3.    The Heavenly Vanilla Product is below.



I.    Vanilla is Perennial Favorite Ice Cream Flavor

    4.    Ice cream is a year-round treat enjoyed by 96% of Americans.[1]

    5.    Its popularity is attributed "to the perfect combination of elements – sugar, fat, frozen water, and air – that make up the mouthwatering concoction."[2]

    6.    Ice cream is defined by a minimum of 10 percent milkfat, weighing no less than 4.5 pounds to the gallon and containing less than 1.4 % egg yolk solids.[3]

    7.    Vanilla is the consistent number one flavor for 28% of consumers, confirmed two groups who would know – the International Dairy Foods Association (IDFA) (ice cream producers) and National Ice Cream Retailers Association (ice cream parlors).

    8.    The reasons for vanilla's staying power are "not only because it is creamy and

---

[1] Arwa Mahdawi, The big scoop: America's favorite ice-cream flavor, revealed, The Guardian, July 11, 2018
[2] Vox Creative, The Reason You Love Ice Cream So Much Is Simple: Science, Eater.com, October 12, 2017.
[3] 21 C.F.R. § 135.110(a)(2) ("Ice cream and frozen custard.").

delicious, but also because of its ability to enhance so many other desserts and treats."[4]

9.     By some estimates, approximately two-thirds of "all ice cream eaten is either vanilla or vanilla with something stirred into it, like chocolate chips."[5]

10.    The applications of vanilla ice cream include its centerpiece between chocolate wafers ("sandwich"), enrobed in chocolate on a stick ("bar"), topping a warm slice of fresh-baked pie ("à la Mode"), drizzled with hot fudge and sprinkled with crushed nuts and topped by a maraschino cherry ("sundae") or dunked in a cold frothy glass of root beer ("float").[6]

A.   Philadelphia-style v. French Ice Cream

11.    In the development of ice cream, the two main types were Philadelphia-style and French ice cream, flavored of course, with vanilla.

12.    Philadelphia-style and French ice cream were introduced to the United States by two men who had served as ambassadors to France: Ben Franklin and Thomas Jefferson.

13.    While these two Founding Fathers could agree on the terms of the Declaration of Independence, they could not reach consensus on which type of vanilla ice cream was superior.

14.    According to legend, Ben Franklin's "crème froid" was "one of the earliest recorded ice cream recipes from the United States," introduced during the sweltering summer of the Constitutional Convention of 1787.[7]

15.    Due to the abundance of dairy farms in the Philadelphia area, the lack of hens to provide an egg yolk base and the need to quickly prepare batches of this refreshing treat for the

---

[4]Press Release, IDFA, Vanilla Reigns Supreme; Chocolate Flavors Dominate in Top Five Ice Cream Favorites Among Americans, July 1, 2018
[5]Bill Daley (the other one), Which vanilla ice cream is the cream of the crop? We taste test 12 top brands, Chicago Tribune, July 18, 2018
[6] The True Wonders of Vanilla Ice Cream, FrozenDessertSupplies.com.
[7] Julia Reed, Ice cream two ways: A tale of two continents, King Arthur Flour, Blog, Aug. 24, 2018; *but see* Jeff Keys, Ice Cream Mix-ins, N.p., Gibbs Smith (2009) at 14.

delegates, Philadelphia-style ice cream was not cooked.[8]

16.    Future President Thomas Jefferson, on the other hand, was a partisan of the egg yolk base, describing this treat as "French ice cream."[9]

17.    The egg yolk solids, coupled with vanilla, distinguish a "French" vanilla ice cream from its "vanilla" counterpart by providing a: [10]

- smoother consistency and silkier mouthfeel than typical vanilla ice cream;

- caramelized, smoky and custard-like taste; and

- deep-yellow color.[11]

18.    Today, ice cream with 1.4% or more egg yolk solids as part of its base is referred to as "french ice cream."[12]

19.    Philadelphia-style and French ice creams also differed in the form of vanilla they used to provide flavor.

20.    The French varieties used vanilla extract, the liquid created when the flavor molecules of a vanilla bean are extracted by alcohol.[13]

21.    The Philadelphia-style ice creams used the dark brown seeds contained inside the vanilla bean pod which had not been subject to extraction – referred to as "caviar," "specks" or

---

[8] Vanilla Ice Cream, Philadelphia-Style, The Perfect Scoop, Epicurious.com, Dec. 2011; Dr. Annie Marshall, Vanilla Bean Ice Cream Two Ways, and Ice Cream Basics, July 8, 2011, Everyday Annie Blog ("Varieties of ice cream generally fall into two main categories: Philadelphia-style or French-style.  Philadelphia style ice creams are quicker and simpler, with a heavy cream/milk mixture for the base.  French-style ice creams have a custard base, with cooked egg yolks to help achieve a creamy texture and rich flavor.").
[9] Thomas Jefferson's Handwritten Vanilla Ice Cream Recipe, Open Culture, July 13, 2014; Thomas Jefferson's Vanilla Ice Cream, Taste of Home, June-July 2012; Thomas Jefferson's Original Vanilla Ice Cream Recipe, Jefferson Papers, Library of Congress; Anna Berkes, "Ice Cream" in Thomas Jefferson Encyclopedia, Thomas Jefferson Foundation, Inc., Monticello.org, June 28, 2013
[10] The descriptor "French" or "french" preceding "vanilla" does not modify the word "vanilla."
[11] Sheela Prakash, What's the Difference Between Vanilla and French Vanilla Ice Cream?, The Kitchn, June 7, 2017.
[12] 21 C.F.R. § 135.110(f)(1) ("The name of the food is 'ice cream'; except that when the egg yolk solids content of the food is in excess of that specified for ice cream by paragraph (a) of this section, the name of the food is 'frozen custard' or 'french ice cream' or 'french custard ice cream'.)
[13] 21 C.F.R. §§ 169.175 (Vanilla extract.) (at least thirty-five (35) percent ethyl alcohol).

"flecks."

<u>Vanilla Extract</u>                    <u>Vanilla Beans</u>

            

22.   Vanilla beans are valued by consumers because they provide a more intense and pure flavor than vanilla extract *and* add visual appeal.[14]

23.   The majority of ice cream today is made in the Philadelphia-style, but the form of vanilla predominantly used is vanilla extract.

24.   Vanilla bean ice cream is expected to contain vanilla extract and vanilla beans as the only sources of flavoring.

II.   Vanilla is Constantly Subject to Efforts at Imitation Due to High Demand

25.   The tropical orchid commonly known as "vanilla" does not  develop its prized flavor on its own, but must be developed over several months following harvest.

---

[14]   Lisa Weiss and Gale Gand, *Chocolate and Vanilla: A Baking Book*, United States: Potter/Ten Speed/Harmony/Rodale (2012) at 113-14; Louisa Clements, <u>Pantry 101: Vanilla extract vs. vanilla beans</u>, Chat Elaine, Nov. 30, 2015; David Lebovitz, The Perfect Scoop: Ice Creams, Sorbets, Granitas, and Sweet Accompaniments. United States: Potter/TenSpeed/Harmony (2011) at 26.

26.     By law, vanilla refers to the "the total sapid and odorous principles extractable from one-unit weight of vanilla beans."[15]

27.     Shortly after the passage of the Pure Food and Drugs Act of 1906, E. M. Chace, Assistant Chief of the Foods Division of the U.S. Department of Agriculture's Bureau of Chemistry, noted "There is at least three times as much vanilla consumed [in the United States] as all other flavors together."[16]

28.     This demand could not be met by the natural sources of vanilla, leading manufacturers to devise methods to imitate vanilla's flavor and appearance.

29.     Though the Pure Food and Drugs Act was enacted to "protect consumer health and prevent commercial fraud," this was but one episode in the perpetual struggle against those who have sought profit through sale of imitation and lower quality commodities, dressed up as the genuine articles.[17]

30.     Daily headlines tell a story of a "resurgent" global threat of "food fraud" – from olive oil made from cottonseeds to the horsemeat scandal in the European Union.[18]

31.     While "food fraud" has no agreed-upon definition, its typologies encompass an ever-expanding, often overlapping range of techniques with one common goal: giving consumers less than what they bargained for.

32.     Vanilla is considered a "high-risk [for food fraud] product because of the multiple

---

[15] 21 C.F.R. §169.3(c)

[16] E. M. Chace, "The Manufacture of Flavoring Extracts," Yearbook of the United States Department of Agriculture 1908 (Washington, DC: Government Printing Office, 1909) pp.333–42, 333 quoted in Nadia Berenstein, "Making a global sensation: Vanilla flavor, synthetic chemistry, and the meanings of purity," History of Science 54.4 (2016): 399-424 at 399.

[17] Berenstein, 412; some of the earliest recorded examples of food fraud include unscrupulous Roman merchants who sweetened wine with lead.

[18] Jenny Eagle, 'Today's complex, fragmented, global food supply chains have led to an increase in food fraud', FoodNavigator.com, Feb. 20, 2019; M. Dourado et al., Do we really know what's in our plate?. Annals of Medicine, 51(sup1), 179-179 (May 2019); Aline Wisniewski et al., "How to tackle food fraud in official food control authorities in Germany." Journal of Consumer Protection and Food Safety: 1-10. June 11, 2019.

market impact factors such as natural disasters in the source regions, unstable production, wide variability of quality and value of vanilla flavorings," second only to saffron in price.[19]

A. Food Fraud as Applied to Vanilla

33.   The efforts at imitating vanilla offers a lens to the types of food fraud regularly employed across the spectrum of valuable commodities in today's interconnected world.[20]

| Type of Food Fraud | Application to Vanilla |
| --- | --- |
| ➢ Addition of markers specifically tested for instead of natural component of vanilla beans | • Manipulation of the carbon isotope ratios to produce synthetic vanillin with similar carbon isotope composition to natural vanilla |
| ➢ Appearance of *more* and/or higher quality of the valued ingredient | • Ground vanilla beans and/or seeds to provide visual appeal as "specks" so consumer thinks they are a result of the product containing real vanilla beans, when the ground beans have been exhausted of flavor, and any vanilla flavor may not even be from real vanilla |
| | • Caramel in vanilla extracts to darken the substance's color additives like caramel to enhance the hue of an imitation vanilla so it more closely resembles real vanilla[21] |
| | • Annatto and turmeric in dairy products purporting to be flavored with vanilla, to darken the color to better resemble the hue of rich, yellow butter |
| ➢ Substitution and replacement of a high | • Tonka beans, which are banned from entry to the United States, instead of vanilla beans |

[19] Société Générale de Surveillance SA, ("SGS "), Authenticity Testing of Vanilla Flavors – Alignment Between Source Material, Claims and Regulation, May 2019.
[20] Kathleen Wybourn, DNV GL, Understanding Food Fraud and Mitigation Strategies, PowerPoint Presentation, Mar. 16, 2016.
[21] Renée Johnson, "Food fraud and economically motivated adulteration of food and food ingredients." Congressional Research Service R43358, January 10, 2014.

| | |
|---|---|
| quality ingredient with alternate ingredient of lower quality | • Coumarin, a toxic phytochemical found in Tonka beans, to increase the vanilla flavor perception |
| ➢ Addition of less expensive substitute ingredient to mimic flavor of more valuable component | • Synthetically produced ethyl vanillin, derived from wood pulp, tree bark or coal tar, to imitate taste of real vanilla |
| ➢ Compounding, Diluting, Extending | • "to mix flavor materials together at a special ratio in which they [sic] compliment each other to give the desirable aroma and taste."[22] |
| | • Combination with flavoring substances such as propenyl guaethol ("Vanitrope"), a "flavoring agent [, also] unconnected to vanilla beans or vanillin, but unmistakably producing the sensation of vanilla"[23] |
| | • "Spiking" or "fortification" of vanilla through addition of natural and artificial flavors including vanillin, which simulates vanilla taste but obtained from tree bark |
| ➢ Addition of fillers to give the impression there is more of the product than there actually is | • Alleged injection of vanilla beans with mercury, a poisonous substance, to raise the weight of vanilla beans; *see International Flavors and Fragrances (IFF), Inc. v. Day Pitney LLP and Robert G. Rose,* 2005. Docket Number L-4486-09, Superior Court of New Jersey, Middlesex County. |
| ➢ Ingredient List Deception[24] | • Subtle, yet deliberate misidentification and obfuscation of a product's components and qualities as they appear on the |

---

[22] Chee-Teck Tan, "Physical Chemistry in Flavor Products Preparation: An Overview" in Flavor Technology, ACS Symposium Series, Vol. 610 1995. 1-17.
[23] Berenstein, 423.
[24] Recent example of this would be "evaporated cane juice" as a more healthful sounding term to consumers to identify sugar.

ingredient list

- o "ground vanilla beans" gives impression it describes unexhausted vanilla beans when actually it is devoid of flavor and used for aesthetics
- o "vanilla flavoring" – "-ing" as suffix referring to something *like* that which is described

III.    The Use of Vanillin to Simulate Vanilla

34.    The synthesis of vanillin from sources other than the vanilla beans by German chemists in the mid-1800s was the equivalent of steroids for vanilla flavor.

35.    Today, only 1-2% of vanillin in commercial use is vanillin obtained from the vanilla plant, which means that almost all vanillin is synthetically produced and has no connection to the vanilla bean.

36.    According to Skip Rosskam, a professor of vanilla at Penn State University and former head of the David Michael flavor house in Philadelphia, "one ounce of vanillin is equal to a full gallon of single-fold vanilla extract."[25]

37.    Nevertheless, disclosure of this powerful ingredient has always been required where a product purports to be flavored with vanilla. *See* Kansas State Board of Health, Bulletin, Vol. 7, 1911, p. 168 (cautioning consumers that flavor combinations such as "vanilla and vanillin…vanilla flavor compound," etc., are not "vanilla [extract] no matter what claims, explanations or formulas are given on the label.").

38.    Since vanilla is the only flavor with its own standard of identity, its labeling is controlled not by the general flavor regulations but by the standards for vanilla ingredients.

---

[25] Katy Severson, Imitation vs. Real Vanilla: Scientists Explain How Baking Affects Flavor, Huffington Post, May 21, 2019.

39.   This means that if a product is represented as being characterized by vanilla yet also contains non-vanilla vanillin, the label and packaging must declare the presence of vanillin and identify it as an artificial flavor. *See* Vanilla-vanillin extract at 21 C.F.R. § 169.180(b) ("The specified name of the food is "Vanilla-vanillin extract _-fold" or "_-fold vanilla-vanillin extract", followed immediately by the statement "contains vanillin, an artificial flavor (or flavoring)".); *see also* 21 C.F.R. § 169.181(b), § 169.182(b) (similar declarations required for Vanilla-vanillin flavoring and Vanilla-vanillin powder).

40.   The required disclosure is applicable even if the vanillin is made from natural materials and through a natural process.

41.   This prevents consumers from being misled by products which may taste similar to real vanilla but are actually made from tree bark, clove oil and recycled paper.

42.   Even "natural vanillins" are alleged to run afoul of FDA guidance for these ingredients.

43.   This is because the "natural" process of high heat and high pressure used to obtain vanillin from the non-vanilla material of eugenol (component of clove oil) is considered by the FDA to a synthetic method of obtaining a flavor.

44.   This ingredient is mainly produced in China, with little transparency or verification, before it is delivered to the flavor companies for use in flavor mixes.

45.   The implication of such a non-natural vanillin is that its hypothesized addition to the "WONF" part of a "Vanilla WONF" is misleading and contrary to law.

IV.   More Recent Attempts at Imitating Vanilla through "WONF"

46.   The global shortage of vanilla beans has forced the flavor industry to "innovate[ing]

natural vanilla solutions…to protect our existing customers."[26]

47.    These "customers" do not include the impoverished vanilla farmers who are at the mercy of global conglomerates nor consumers, who are sold products labeled as "vanilla" for the same or higher prices than when those products contained *only* vanilla.

48.    According to Suzanne Johnson, vice president or research at a North Carolina laboratory, "Many companies are trying to switch to natural vanilla with other natural flavors [WONF] in order to keep a high-quality taste at a lower price."

49.    According to industry leaders like the head of "taste solutions" at Irish conglomerate Kerry, flavor manufacturers must "[G]et creative" and "build a compounded vanilla flavor with other natural flavors."

50.    These compounded flavors typically exist in a "black box" and "consist of as many as 100 or more flavor ingredients," blended together in a special ratio to complement and enhance the vanilla component.[27]

51.    A compounded vanilla flavor "that matches the taste of pure vanilla natural extracts" can supposedly "provide the same vanilla taste expectation while requiring a smaller quantity of vanilla beans. The result is a greater consistency in pricing, availability and quality."[28]

V.    Ice Cream Flavor Labeling

52.    Daphna Havkin-Frenkel, editor of the *Handbook of Vanilla Science and Technology*, and a leading scholar and researcher on vanilla, summarized these issues in the context of ice

---

[26] Amanda Del Buouno, Ingredient Spotlight, Beverage Industry, Oct. 3, 2016.
[27] Hallagan and Drake, FEMA GRAS and U.S. Regulatory Authority: U.S. Flavor and Food Labeling Implications, Perfumer & Flavorist, Oct. 25, 2018; Charles Zapsalis et al., *Food chemistry and nutritional biochemistry*. Wiley, 1985, p. 611 (describing the flavor industry's goal to develop vanilla compound flavors "That *Seem*[s] to be Authentic or at Least Derived from a Natural Source") (emphasis added).
[28] Donna Berry, Understanding the limitations of natural flavors, BakingBusiness.com, Jan. 16, 2018.

cream flavored by vanilla:[29]

> There are three categories of vanilla ice cream, as defined by the FDA
> Standard of Identity. Vanilla ice cream Category I contains only vanilla
> extract. Vanilla ice cream Category II contains vanilla made up of 1 oz
> of synthetic vanillin per 1 gallon of 1-fold vanilla extract. Vanilla ice
> cream Category III contains synthetic ingredients.

53.    Carol McBride, U.S. vanilla category manager for global flavor giant Symrise,
pointed out that "If the flavor comes partially or fully from another source, the company must
stamp 'vanilla flavored' or 'artificial vanilla' on the front of the package, a likely turnoff to
consumers."[30]

A.   Early Ice Cream Flavoring Debate is "Stirring"

54.    Before formal regulations were enacted, Congressional Hearings from the 1930s
offered the legislature the opportunity to state their position on the non-misleading designation of
flavors on ice cream products.

55.    Unsurprisingly, the starting point for the debate was how to label vanilla ice cream
flavored with vanillin obtained not from vanilla beans but from clove oil, a natural source material.

56.    Why, the lobbyists, asked Congress, could they not label their products as "vanilla
ice cream" if it contained vanillin from sources other than vanilla beans?

57.    In response, Congressmen E.A. Kenny of New Jersey and Virgil Chapman of
Kentucky inquired of the ice cream lobby's representative, Mr. Schmidt:

> Mr. Kenney:   Do you not think, though, Mr. Schmidt, that if you label it vanilla
> ice cream, it ought to be vanilla; and if it is made with vanillin
> extracted from oil of cloves, you ought to label it manufactured
> with such vanillin?

> Mr. Schmidt:  Well, we, of course, do not think so. That is why we are here

---

[29] Daphna Havkin-Frenkel and Faith C. Belanger, eds., *Handbook of Vanilla Science and Technology*, Wiley, 2018 (221).
[30] Melody M. Bomgardner, "The problem with vanilla," Chemical & Engineering News, Sept. 12, 2016.

making our protest. We think, after all, the consuming public is accustomed to accepting as vanilla artificial vanillas.

Mr. Kenney: *We agree that Barnum educated us along that line a long time ago.* (emphasis added)

……………

Mr. Chapman: I do think that if it is chocolate it ought to be labeled "chocolate"; and if it is flavored with vanillin made from oil of cloves, it ought to be labeled to show that it is flavored with vanillin made from oil of cloves; and if it is flavored with vanilla, it ought to be labeled "vanilla"; and if it is " flavored with lemon, it ought to be labeled lemon "; and if it is cherry, it ought to be labeled "cherry."

58.    Later in the hearing, Mr. Chapman and another industry representative engaged over the proper declaration of flavor for ice cream:

Mr. Chapman:   Do you make raspberry?

Mr. Hibben.    Yes.

Mr. Chapman    And you put that on the label?

Mr. Hibben     We say "raspberry ice cream."

Mr. Chapman    And if it is peach, you put that on the label?

Mr. Hibben.    It Is peach ice cream; yes.

Mr. Chapman.   And If you call it vanilla, what do you put on?

Mr. Hibben     We put "vanilla ice cream" on our labels. That Is what we want to continue to do. We want to put vanilla on those labels.

Mr. Chapman    But you say you put in It oil of cloves instead of vanilla.

Mr. Hibben     We do not use cloves. We use vanillin derived from the oil of cloves.

Mr. Chapman.   If you put out strawberry ice-cream, you would not want to use raspberry to make it, would you?

Mr. Hibben     No; but we use vanillin, which is an ingredient of the vanilla bean and, its true to name.

Mr. Chapman    Is it an extract from the vanilla bean?

| Mr. Hibben | It is both. It is taken both from the eugenol and the vanilla bean and is the same product. If you were a chemist you could not tell the difference, and if you were a doctor, you would say that one is just as harmless as the other. |
|---|---|
| Mr. Chapman | I do not object to buying artificial vanilla ice cream if it is pure, but if it is artificial, I would like to know what I am getting. |

59.    The above highlighted portions reveal that even before ice cream standards were established, the central question for ice cream flavoring was whether the flavor source was entirely derived from the characterizing flavor – whether raspberry for raspberry ice cream, vanilla for vanilla ice cream and so on.

B.    Ice Cream Flavoring Regulations

60.    The ice cream standard of identity at 21 C.F.R. § 135.110, established in the early 1960s "provided for a system for designating characterizing flavors in ice cream which has come to be referred to as the '3 category flavor labeling.'"  Exhibit "A," FDA, Taylor M. Quinn, Associate Director for Compliance, Bureau of Foods, to Glenn P. Witte, International Association of Ice Cream Manufacturers, May 31, 1979 ("Quinn Letter, May 31, 1979").

61.    The requirements "recognize[s] three distinct types of ice cream, based on the use of natural and various combinations of natural and various combinations of natural and artificial flavors that characterize this food." Quinn Letter, May 31, 1979; *see* 21 C.F.R. § 135.110(f)(2)(i)-(iii); 21 C.F.R. § 135.110(f)(3)-(5).

**Vanilla Ice Cream Labeling Quick Chart**

| Category | Label Diagram | Flavor Source | Authority (21 C.F.R.) |
|---|---|---|---|
| I | ["characterizing flavor"] + ["ice cream"] → "Vanilla Ice Cream" or "Strawberry Ice Cream" | Vanilla Beans | §135.110(f)(2)(i) |

| II | ["characterizing flavor"] + ["flavored"] + ["ice cream"] → "Vanilla Flavored Ice Cream" or "Peach Flavored Ice Cream" | Vanilla Beans; Non-Vanilla Beans | §135.110(f)(2)(ii) |
| III | ["artificial" or "artificially flavored"] + ["characterizing flavor"] + ["ice cream"] → "Artificially Flavored Vanilla Ice Cream" or "Artificially Flavored Strawberry Ice Cream" | Vanilla Beans; Non-Vanilla Beans | §135.110(f)(2)(iii) |

62.     The key distinction between labeling flavors in ice cream compared to other foods is in the meaning of "natural flavor."

63.     In ice cream, "natural flavor" refers to flavor derived only from the characterizing flavor, while "artificial flavor" refers to flavors derived from sources other than the characterizing flavor.

64.     For a category 1 ice cream, which "contains no artificial flavor, the name on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., 'vanilla,' in letters not less than one-half the height of the letters used in the words 'ice cream.'" 21 C.F.R. §135.110(f)(2)(i); *see* Quinn Letter, May 31, 1979 ("the designation of a characterizing flavor for category I ice cream is based on the premise that only natural flavor derived from the product whose flavor is simulated may be used.").

65.     Category II and III both may contain a natural characterizing flavor and artificial flavor simulating it, but differ based on whether the natural characterizing flavor predominates. *See* 21 C.F.R. §135.110(f)(2)(ii) ("Category II") ("If the food contains both a natural characterizing flavor and an artificial flavor simulating it, and if the natural flavor predominates"); 21 C.F.R. §135.110(f)(2)(iii) ("Category III") ("If the food contains both a natural characterizing flavor and an artificial flavor simulating it, and if the artificial flavor predominates"); Quinn Letter, May 31, 1979 ("The flavor designation for category II ice cream is on the basis that the product contains

15

both natural and artificial flavor, but the natural flavor predominates, whereas in category III the artificial flavor predominates.").

66.    The non-vanilla flavor which simulates the natural characterizing vanilla flavor is deemed to predominate when "the amount of vanillin used is greater than 1 ounce per unit of vanilla constituent." *See* 21 C.F.R. §135.110(f)(5)(i).

67.    A non-vanilla flavor "is deemed to simulate [resemble or reinforce] vanilla if the addition of the non-vanilla flavor results in a reduction in the amount of vanilla bean derived flavor that would otherwise be used in a vanilla flavored ice cream."  Exhibit "B," FDA, R.E. Newberry, Assistant to the Director, Division of Regulatory Guidance, Bureau of Foods, to Daniel P. Thompson, October 30, 1979 ("Newberry Letter, October 30, 1979") ("such a product would come under category III and have to be labeled as 'artificial vanilla.'").

VI.    Ice Cream Flavor Designation is Unique to this Food

68.    One of the reasons for these different requirements is because ice cream is a high quality and expensive product made mainly from milk and cream.

69.    Since the flavor designation for ice cream is set out in its own standards and was established long before the general flavor regulations were developed, "the labeling requirements for the declaration of flavors in the name of ice cream are specifically provided for by the standard." Exhibit "A," Quinn Letter, May 31, 1979 ("The general flavor regulations are not applicable to this standardized food."); Exhibit "C," FDA, J.L. Summers, Assistant to the Director, Division of Regulatory Guidance, Bureau of Foods, April 10, 1979 to David B. Daugherty ("Summers Letter, April 10, 1979") ("Consequently, the labeling requirements for the declaration of flavors in the name of ice cream are specifically provided for by the standard and is separate

and apart from the general flavor regulations.").[31]

70.    Under 21 C.F.R. § 101.22(a)(3), "natural flavor" is defined generally as "the essential oil, oleoresin, essence or extractive…which contains the flavoring constituents" from a natural source such as plant material and can refer to combinations of natural flavors.

71.    "Artificial flavor" in contrast is any substance whose function is to impart flavor that is not derived from a natural source.  *See* 21 C.F.R. § 101.22(a)(1).

72.    For the purposes of designating the type of ice cream on the front label, whether a flavor complies with the general definition of natural flavor in other regulations has no relevance. Exhibit "C," Summers Letter, April 10, 1979 ("A product identified as 'Vanilla Ice Cream' is subject to the category I ice cream requirements and, therefore, must contain only the characterizing flavor derived from vanilla beans."); Exhibit "A," Quinn Letter, May 31, 1979 ("It is our understanding that there are available in the market place, natural flavoring compounds that resemble, simulate and/or enhance vanilla flavor but are not derived from vanilla bean.  These flavor compounds would not comply with the intent of the flavor provisions of Category I ice cream").

73.    At best, "[N]atural flavors not derived from vanilla beans may be used in combination with the standardized items included under 21 CFR 169 (vanilla-vanillin extract or vanilla-vanillin flavoring) for category II vanilla flavored ice cream provided that the flavoring contributed by or derived from the vanilla beans predominates."  Exhibit "D," FDA, Quinn to Kenneth Basa, August 22, 1979.

VII. The Products are Misleading Because they Contain Non-Vanilla Flavoring

---

[31] Compare 21 C.F.R. § 135.110(f)(2)-(5) with 21 C.F.R. § 101.22.

74.    The front label statement of "Vanilla Ice Cream" without qualification and the vignette of the vanilla beans are understood by consumers to identify a product where (1) vanilla is the characterizing flavor, (2) vanilla is contained in a sufficient amount to flavor the product, (3) no other flavors in the product simulate vanilla, (4) no other flavors in the product simulate, resemble, reinforce, or enhance vanilla and (5) vanilla is the exclusive source of flavor.

A.    Ingredient List Declares "Natural Flavors"

75.    The ingredient list reveals the Products contain non-vanilla flavors because "Natural Flavors" is declared.

> **INGREDIENTS:** SWEET CREAM BUTTERMILK, CREAM, SUGAR, WHEY, CONTAINS LESS THAN 2% OF NATURAL FLAVOR, CAROB BEAN GUM, GUAR GUM, ANNATTO EXTRACT (COLOR).

76.    Where a Category 1 vanilla ice cream product purports to have a characterizing flavor of vanilla or vanilla bean, without any qualification, but the ingredient list identifies "natural flavor" as the exclusive flavoring ingredient or as one of the flavoring ingredients, it means (1) the flavoring in the food is not exclusively vanilla and (2) the product contains non-vanilla flavors obtained from arguably natural sources other than vanilla beans and made through supposed natural processes.[32]

77.    The common or usual names of the exclusively vanilla ingredients include Vanilla Extract, Concentrated Vanilla Extract, Vanilla Flavoring and Concentrated Vanilla Flavoring, specified in the regulations for vanilla ingredients.  *See* 21 C.F.R. §§ 169.175 to 169.178.

---

[32] These natural processes may include fermentation but when high heat and high pressure is used, the FDA considers this to be a synthetic method of obtaining a flavor.  This "natural" process of high heat and high pressure is used to obtain vanillin from the non-vanilla material of eugenol, the main component of clove oil. Vanillin derived from eugenol through a high heat and high pressure process is not considered "natural vanillin" which makes its addition to the "WONF" part of "Vanilla WONF" misleading. Further, it is misleading and unlawful to use any type of vanillin with vanilla and not explicitly disclose that vanillin is considered an artificial flavor because this flavor was created to "boost" a real natural flavor, vanilla.

78.     These exclusively vanilla ingredients – vanilla flavoring, vanilla extract, etc. – differ only in that the former is at least thirty-five (35) percent ethyl alcohol while the latter is less than this amount.[33]

79.     Because ice cream is a standardized food and the vanilla ingredients are subject to their own standards of identity, the designation of these vanilla ingredients is controlled by 21 U.S.C. §343(g) – they are required to be specifically declared:[34]

> A food shall be deemed to be misbranded –
>
> (g) Representation as to definition and standard of identity
>
> If it purports to be or is represented as a food for which a definition and standard of identity has been prescribed by regulations as provided by section 341 of this title, unless (1) it conforms to such definition and standard, and (2) its label bears the name of the food specified in the definition and standard, and, insofar as may be required by such regulations, the common names of optional ingredients (other than spices, flavoring, and coloring) present in such food.

80.     It is also a general requirement that all ingredients be listed by their common or usual name. *See* 21 C.F.R. § 101.4(a)(1).

B.  <u>"Natural Flavor" as Declared on Ingredient List in Accordance with 21 C.F.R. § 101.22 ≠ Vanilla Extract or Vanilla Flavoring</u>

81.     "Natural Flavor" on the Products' ingredient list does not refer to an exclusively "Vanilla Extract."

82.     This is because if it did, this high-valued ingredient would be declared.

83.     The reasons why "natural flavor" is permitted as a designation for flavoring include (1) the flavor package received from a supplier will be a mix of multiple flavors, without any standard way to declare such a blend, (2) protection of valuable trade secrets since identification

---

[33] 21 C.F.R. §§ 169.175 (Vanilla extract.), 169.177 (Vanilla flavoring.); also concentrated versions of each of these.
[34] 21 U.S.C. § 343(g)(2) read with 21 C.F.R. § 135.110(f)(2)(i) and 21 C.F.R. §§ 169.175 – 169.178.

of the flavor components would then be known to competitors.

84.    It would not be permitted to hide behind "natural flavor" on the ingredient list while at the same time claiming this ingredient is entirely vanilla extract or vanilla flavoring.

85.    The truth is that certain statements – like the ingredient list – are more judicious than others.

86.    Where it comes to an ingredient list, there is a greater expectation for compliance with the letter of the law, because this part of the product labeling has implications for safety, and is less prone to creative license than the front label.

C.    Front Label "Made With Rich Cream and Vanilla" Claim is Misleading

87.    The front label contains a scoop of vanilla ice cream, a waffle piece, the vanilla flower and states the brand name, "Simply Crafted," "Premium Ice Cream," "No Artificial Flavors," "No High Fructose Corn Syrup," "Made with Real Cream From Family Farms," and beneath the product variety, "Heavenly Vanilla," the label states "Made with Rich Cream and Vanilla."

88.    The statements and images give a reasonable consumer the impression that the Product is flavored exclusively from vanilla beans.

89.    This is a reasonable expectation because (1) the front label does not contain any qualifiers with respect to the "vanilla" designation – i.e., "flavored," "with other flavors," etc. and (2) for over fifty years products labeled as "vanilla ice cream" contained only flavor derived from vanilla, which could be confirmed by checking the ingredient list and seeing "vanilla extract" or "vanilla flavoring" instead of "natural flavor" which contains compounds that simulate, resemble or enhance vanilla.

90.    In this context, the statement, "Made with Rich Cream and Vanilla," is true, as far as

it goes, but also is misleading.

91.   This is because the Products presumably do contain vanilla, but their flavoring contains compounds which supplement vanilla and allow the defendant to provide less vanilla to consumers by simulating and resembling vanilla instead of adding more of it.

92.   The front label does not tell the truth – "Made with Rich Cream, Some Vanilla and Some Compounds that Will Trick You into Thinking There is More Vanilla Than There Actually Is, and We Couldn't Tell You What They Are Because We Don't Know Either."

D.   Product Analysis May Reveal Presence of Non-Vanilla Flavors

93.   The four most significant markers for vanilla from real vanilla beans are identified below with their relative amounts.

| Compounds | Percent Present in Vanilla Beans |
|---|---|
| vanillin | 1.3-1.7 % |
| p-hydroxybenzaldehde | 0.1% |
| vanillic acid | 0.05% |
| p-hydroxybenzoic acid | 0.03% |

94.   An analysis of the Products using gas chromatography-mass spectrometry ("GC-MS") may support the contention that the Products are not exclusively flavored with vanilla from vanilla beans.

95.   Based on similar sample testing, the ratio of vanillin to p-hydroxybenzaldehyde may exceed the 10:1 ratio of these compounds when found in vanilla derived from vanilla beans.

96.   This would mean there is vanillin not derived from the vanilla bean present in the Products.

97.   The analysis of similar products has detected maltol, a compound not typically found in vanilla.

21

98.   Maltol is well-known in the flavor industry as a flavor enhancer or potentiator with a long-established usage in ice cream products.

99.   Maltol improves overall flavor, increases sweetness, and enhances the sensation of creaminess, all attributes relevant to developing a vanilla ice cream product.

100.   Sample testing of similarly identified products has determined that many Vanilla WONF ingredients contain added vanillin, to "boost" the miniscule amount of vanilla from actual vanilla beans, which is inconsistent with a category I product.

101.   Without disclosure of added vanillin, the consumers will believe the product has more vanilla than it actually does.

102.   The reasonable conclusion is that (1) such products contain a small amount of vanilla derived from vanilla beans and (2) the "Natural Flavor" does not refer exclusively to vanilla extract or vanilla flavoring.

E.   Natural Flavor Refers to Vanilla WONF (in Sheep's Clothing)

103.   Because the "Natural Flavor" is not identical to an exclusively vanilla flavor ingredient, there must be some differences between these ingredients.

104.   The "Natural Flavor" used in the Product is most likely the ingredient known as "Vanilla With Other Natural Flavors" or "Vanilla WONF."

105.   This is a compounded flavor which typically contains potentiators and enhancers, like maltol, and may contain vanillin.

106.   A company like defendant may invoke reliance on its flavor supplier who has told them the product contains "100% natural vanilla flavorings" or is "almost all vanilla."[35]

---

[35] "Almost all" is not "all" and the suffix, "-ing," is a giveaway that the flavor ingredient used is *like* vanilla, in the same way the suffix "-ey" applied to chocolate is another way of saying, "this product tastes like chocolate, but is not chocolate."

107.   Attempts at prying open this "black box" of the flavor industry invokes terms such as "proprietary," "trade secret" and "confidentiality."

108.   Such an argument is incredulous because there is nothing proprietary about vanilla extract, which has been prepared the same way for one hundred years, even before a standard of identity was established.

109.   Eventually, the flavor company may produce a single page document which says something like "Nat Vanilla Extract WONF" followed by a string of letters and numbers.

110.   All of these arguments miss the point and cast aside the long-established (and adhered to) three-category flavor labeling regime for ice cream.

111.   The requirements – and resulting consumer expectations for almost fifty years – are clear: "the flavor agent for vanilla ice cream (a category I product) is limited to vanilla bean and/or flavor derived from vanilla beans." Exhibit "A," Quinn Letter, May 31, 1979; *see also* Exhibit "C," Summers Letter, April 10, 1979 ("A product identified as 'Vanilla Ice Cream' is subject to the category 1 ice cream requirements and, therefore, must contain only the characterizing flavor derived from vanilla beans," "the standard for ice cream does not provide for the label designation of "With other [natural] flavors" (WONF).").

112.   The flavor houses are partially responsible for the consumer deception because even though they do not manufacture the final Product, they supply its most valuable and important component – the flavoring.

113.   The flavor companies are also in the best position to correct any deceptive or incorrect label statements with respect to flavor.

114.   The manufacturers are agreeable to following the misleading guidance of their flavor suppliers who are complicit in the mislabeling of the Products and ensuing consumer deception.

VIII.   Vanilla Ice Cream Products are Misleading Because They are Labeled and Named Similar to Other Products

115.   Competitor brands to defendant's Products are labeled as or containing vanilla ice cream, and are not misleading because they only contain vanilla.

A.   <u>Vanilla Ice Cream of Competitor and Defendant</u>

116.   The following is an example of Vanilla Ice Cream of defendant and a competitor product.

<u>Competitor Product</u>                                      <u>Product</u>




**INGREDIENTS:** CREAM, SKIM MILK, CANE SUGAR, EGG YOLKS, <mark>VANILLA EXTRACT</mark>.

**INGREDIENTS:** SWEET CREAM BUTTERMILK, CREAM, SUGAR, WHEY, CONTAINS LESS THAN 2% OF <mark>NATURAL FLAVOR</mark>, CAROB BEAN GUM, GUAR GUM, ANNATTO EXTRACT (COLOR).

117.   The competitor product lists "Pure Vanilla Extract" on its ingredient list and does not indicate the presence of other flavors not derived from vanilla, such as "Natural Flavor," as listed in defendant's Products.

B.   <u>Misleading to Have Identical or Similar Product Names Where Significant Differences in</u>

Product Quality or Composition

118.  Product names and identity statements for ice cream are established through application of the relevant regulations.

119.  Products are required to be identified and labeled in a way consistent with other products of similar composition.

120.  This framework assures consumers will not be misled by the quality and components of similarly labeled products where one product contains a greater amount, type and/or proportion of a characterizing and valuable ingredient.[36]

121.  Where two products are identified by the same descriptive terms and noun such as "Vanilla Ice Cream" and where the front label has no other modifications of these terms, consumers will be deceived into purchasing the lower quality product under the false impression that it contains the equivalent amount of said ingredients or components.

122.  Defendant's Products are misleading because they are represented as identical to another product which contains higher quality ingredients, which causes consumers to be misled and purchase the former expecting the two products to be identical in quality and fill.

IX. Conclusion

123.  The proportion of the characterizing component, vanilla, has a material bearing on price or consumer acceptance of the Products because it is more expensive and desired by consumers.

124.  The Products are misleading because they do not contain the amount, type and

---

[36] *See* 21 C.F.R. § 135.110(f) and 21 C.F.R. § 102.5(a) ("General principles.") ("General principles.") ("The name shall be uniform among all identical or similar products and may not be confusingly similar to the name of any other food that is not reasonably encompassed within the same name. Each class or subclass of food shall be given its own common or usual name that states, in clear terms, what it is in a way that distinguishes it from different foods.").

percentage of vanilla as a component of the flavoring in the product which is required and consistent with consumer expectations.

125.   The representations of "vanilla (bean)" describing the ice cream products are unqualified, and the labels and packaging do not disclose the addition of non-vanilla flavors as part of the Products.

126.   Had plaintiff and class members known the truth about the Products, they would not have bought the Product or would have paid less for it.

127.   The Products contain other representations which are misleading and deceptive.

128.   As a result of the false and misleading labeling, the Products are sold at premium prices, approximately no less than $6.59 per 9.12 OZ, calculated on an average per ounce basis across the Products, excluding tax – compared to other similar products represented in a non-misleading way.

<u>Jurisdiction and Venue</u>

129.   Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

130.   Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

131.   Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

132.   Plaintiff is a citizen of New York.

133.   Defendant Kemps LLC is a Delaware limited liability company with a principal place of business in Saint Paul, Ramsey County, Minnesota.

134.   This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

135.   Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

136.   A substantial part of events and omissions giving rise to the claims occurred in this District.

Parties

137.   Plaintiff Mario Vinales is a citizen of New York County, New York.

138.   Defendant is a Delaware limited liability company with a principal place of business in Saint Paul, Ramsey County, Minnesota and upon information and belief, at least one member of defendant is not a citizen of New York.

139.   During the class period, plaintiff purchased one or more of the Products identified herein for personal use, consumption or application based on the above representations, for no less than the price indicated, *supra*, excluding tax, in her state or an immediately adjacent state.

140.   Plaintiff would consider purchasing the Product again if there were assurances that the Products' representations were no longer misleading.

Class Allegations

141.   The classes will consist of all consumers in all 50 states with sub-classes for the individual states and nationwide classes.

142.   Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if plaintiff and class members are entitled to damages.

143.   The claims and the basis for relief of plaintiff are typical to other members because

all were subjected to the same representations.

144.  Plaintiff is an adequate representative because his interests do not conflict with other members.

145.  No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

146.  Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

147.  The counsel for plaintiff is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

148.  Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350</u>
<u>and Consumer Protection Statutes of Other States and Territories</u>

149.  Plaintiff asserts causes of action under the consumer protection statutes of New York, General Business Law ("GBL") §§ 349 & 350.

150.  Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

151.  Plaintiff and class members desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product type.

152.  Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because (1) it gives the impression to consumers the Products are only flavored by the characterizing ingredient and contains more of the characterizing ingredient than they actually do and (2) the ingredient list fails to dispel ambiguity and reinforces the front-label impression as to a greater amount of the characterizing ingredients.

153.  Plaintiff and class members relied on the representations and omissions, paying more

than they would have, causing damages.

## Negligent Misrepresentation

154.  Plaintiff incorporates by reference all preceding paragraphs.

155.  Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Products through representing the characterizing ingredient was present in greater amount and proportion than it was and affirmatively representing the Products was flavored only by this ingredient or component.

156.  Defendant had a duty to disclose and/or provide non-deceptive labeling of the Products and knew or should have known same were false or misleading.

157.  This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product or service type.

158.  The representations took advantage of consumers' (1) cognitive shortcuts made at the point-of-sale and (2) trust placed in defendant, a well-known and respected brand in this sector.

159.  Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

160.  Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

## Breaches of Express Warranty, Implied Warranty of Merchantability and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

161.  Plaintiff incorporates by reference all preceding paragraphs.

162. Defendant manufactures and sells products which contain the identified characterizing ingredients and/or flavors which are desired by consumers.

163.   The Products warranted to plaintiff and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

164.   Defendant's front labels informed and warranted to plaintiff the Products contained only the characterizing ingredients to impart flavor, and that they were present in amounts sufficient to independently characterize the food and that the flavor imparted to the Products was a result of the food ingredients and not "natural flavors" or "other natural flavors."

165.   Defendant had a duty to disclose and/or provide a non-deceptive description of the Products flavoring on the front labels and knew or should have known same were false or misleading.

166.   This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

167.   Plaintiff provided or will provide notice to defendant and/or its agents, representatives, retailers and their employees.

168.   The Products did not conform to their affirmations of fact and promises due to defendant's actions and were not merchantable.

169.   Plaintiff and class members relied on defendant's claims, paying more than they would have.

<u>Fraud</u>

170.   Plaintiff incorporates by references all preceding paragraphs.

171.   Defendant's purpose was to sell products which purported to contain valuable and desired characterizing ingredient(s) or flavor(s), and represent the Products were exclusively or predominantly flavored from that ingredient and contained sufficient independent amounts of

same.

172.   The Products were not flavored exclusively from the characterizing ingredient but from flavor compounds blended together and labeled as "natural flavor."

173.   Defendant's fraudulent intent is evinced by its failure to accurately indicate the Products contained flavor from non-vanilla sources on the front label, because it knows consumers prefer foods that are flavored from food ingredients instead of added flavor ingredients and contain enough of the characterizing food ingredients to flavor the Products.

174.   Defendant's intent was to secure economic advantage in the marketplace against competitors by appealing to consumers who value products with sufficient amounts of the characterizing ingredients for the above-described reasons.

175.   Plaintiff and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

## Unjust Enrichment

176.   Plaintiff incorporates by references all preceding paragraphs.

177.   Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

   **WHEREFORE,** Plaintiff prays for judgment:

1.   Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2.   Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove and/or refrain from the challenged representations, restitution and disgorgement for members of the State Subclasses pursuant to the consumer protection laws of their States;

4.  Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and consumer protection law claims, and other statutory claims;

5.  Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6.  Other and further relief as the Court deems just and proper.

Dated:   November 11, 2019

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

*-and-*

Reese LLP
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
*mreese@reesellp.com*

1:19-cv-10463
United States District Court
Southern District of New York

Mario Vinales, individually and on behalf of all others similarly situated,

                              Plaintiff,


        - against -


Kemps LLC,
                              Defendant


# Class Action Complaint


```
Sheehan & Associates, P.C.
 505 Northern Blvd., #311
   Great Neck, NY 11021
    Tel: (516) 303-0552
    Fax: (516) 234-7800
```


Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  November 11, 2019

                                        /s/ Spencer Sheehan
                                        Spencer Sheehan